And we will now go to the second and final case of the day, United States, Kimball-Griffith v. Burman, Kachuma Operation and Maintenance Board, and the Santa Barbara County Board of Supervisors. Mr. Burger, take your time, whatever you need to do today. I'm good, thank you, Your Honor. Yes, very well. Please proceed. May it please the Court, Michael Burger, Manette Phelps, and Phillips for the appellants. I would like to try to reserve five minutes for rebuttal. Please, we'll keep an eye on the clock. We'll try to help. I will do that. This is a case about reopening an old eminent domain judgment. The district court transformed it into a quiet title case. By transforming it into a quiet title case, the district court was able to use a statute of limitations that resulted in dismissing the case. Let me ask you this. I practiced real estate law for about 37 years, so I know a little bit about it. And my understanding is that you've got to point to a document somewhere that created the easement. I don't see that here. What am I missing? Well, what we're dealing with here is a matter of California property law. It says that when property abuts a road, the owner of that property has a property interest in the road, in the sense of the easement. To the degree that it abuts there. But that's not an easement. That's a reality. Well, it's not an easement. What it is is a fee interest that's overimposed by the public right away. But in this case, I don't see anything in the record that shows that A gave to B an easement. The map showed something from before, but there was nothing that I saw that talked about the creation of an easement. If you're looking for the classic creation of an easement as set out in the statutes, you're not going to find it. It isn't there. So let's assume that that's the case. So on what do we rely then? Your case is based upon the fact that there is an easement. And I'm looking for where that easement comes from. It comes from the fact that my client owns property that abuts that road. And under the rulings in Bassage v. Board of Control and Breitart v. Board of Control California cases, California law, that that property owner has an interest in the road in the nature of an easement. And that's what it is. And as the Supreme Court determined in the Hassad case very recently, the easements are created in all sorts of different ways. The idea that the only way you create an easement is by following the statutory points was raised directly in that case by the State of California, and the Court dismissed it. Most of those deal like easements by prescription, easements by necessity, et cetera, et cetera, et cetera. But this case involves an allegation that you had a – basically almost a pioneer kind of a road that existed there. And nobody seems to know who created it. Nobody seems to know anything about it except that at some point the United States condemned the land. And when it did that, then you get into the quiet title action because the statute, the federal statute says that anything involving federal land issues must be decided under that statute. Does it not? Well, if you make a claim that way, yes. But what we're asking the Court to do here is to reopen a judgment that was specifically left to be reopened when the land there was condemned and the property was taken subject to any other interests that might be around. Well, let's argue – let's say that you're correct. That still doesn't change the fact that you've got a claim against the United States of America, and the quiet title statute says that where you deal with that is under that statute in the Court of Claims, right? Well, that is one way to deal with that – with a claim. I don't think that that says that we can't do what the judgment in that 1955 condemnation case said and reopen the judgment to take into account the fact that what the United States actually took – not what it said it took, but what it actually took – was much more than just the road subject to other interests. It took those other interests. It said it took those other interests. And what we want to do is to reopen that eminent domain judgment so that it can properly take into account the actuality of what the United States took at that point. Are there any allegations about the usage of the road either at the time the property was condemned or between the condemnation and the installation of the gate in 1991? I don't believe there are, Your Honor. I mean, there are allegations of historical use. I mean, because the – as I understand the Basich-type theory, it would depend in some sense on use for ingress and egress out of the property, and I don't see that you've put anything on the table in that regard. Part of the problem, Your Honor, is the interaction of all of these defendants. Everybody denied that my client had a right to access to the road, notwithstanding what the judgment said, because nobody told us about the judgment. 1958? Nobody told us about the judgment. It's in the title chain that it's subject – I mean, the 52 document – Not recorded. It's in the title chain recorded, the 1952 declaration, which has the same language. You even acknowledge in your brief it has the same language that it's subject to rights of way. It does have that. It doesn't have the critical piece that's in the end of the 1955 judgment that it was subject to being reopened. That has to be recorded as opposed to what the actual substance of the limitation is? A procedural thing about a lawsuit needs to be recorded? I can't imagine that the judgment shouldn't have been recorded. But the condition that you claim gives – is the source of the right. That condition was recorded in the chain of title, and you just didn't see it. It's there. It's in the initial one. And you have constructive notice of that under California law, do you not? We had constructive notice of the 1952 document, yes. We have to say that. The other thing that's weird about this case is that at the time of the condemnation, the two parcels were owned by the same owner, so it was one large piece. So there would not have been an easement of that owner against its own property. So there's no existing easement as if it were condemned and there's an easement to the neighbor. It's one big property, and so how does it happen that when one person divides the property that they suddenly acquire an easement across what was their own property without any kind of recordation of that? Well, because the road was there, and the road ended up being taken by the government as part of that 1955 condemnation. But as my colleague points out, the fact that there's a road on a big piece of property, if it's all owned by the same entity or person, you can't have an easement against yourself. If you're the owner of the fee and you ever road up your property, that's not even an easement. It's just you're using the property for however you want. Plus, even if you set aside the issue of the constructive notice that comes from the public documents, you have restrictions on the use of the easement, as you call it, for some time. That's notice as well, is it not? Well, it's notice that there's something there, but the fact is that notice was that those barriers were illegal. Well, say they were. All the more reason that triggers the statute of limitations. You say, wait a minute, they've blocked my easement, right? No. Tell me why. The reason, Your Honor, is that we didn't know, or my client didn't know, that she had a right to use that road. See, that's even more strange because, you know, with all due respect to your client, I'm sure she's a very nice person, but the reality is you either have a right or you don't have a right. There's nothing in the record that says there's an easement here. We agree about that, right? So you've got your 1952 document that describes whatever was there. She doesn't know there's anything blocking her road, and yet it's been blocked for a long time. You say that's illegal. Okay, well, if it's illegal, you have legal rights to take care of that problem. She didn't do that. There are just all kinds of ways. I feel sorry for her, but there are all kinds of ways in which she had notice and she didn't act. I don't know what we do with this. What am I missing? She kept being told by each of the defendants that the federal government had what they called clear title to the road, and she had no right to it. She had no reason to know she had any right to it until they unearthed the judgment in 2018. That's her problem. I don't understand. You said she didn't know she had no right to the road until you unearthed the judgment, but then the language that's in the judgment that's the source of the right to the road is the same language that was in the 52 Declaration that is in the chain of title. That's part of where the right comes from. The rest of the right comes from California case law, which says that if you own property that borders on a road, you have a property right in that road. And you use it for ingress and egress. It's available. But you've not shown anything, not alleged anything, that it actually was ever used even before it was blocked in 1991. I think the allegations are that the road had been used, but by her? Well, no, not by her. She didn't get the property until the mid-'50s. On that point, your claim to easement, is it primarily a legal argument that by operation of California law she has that, or is it something? I know you mentioned the 1890 map that shows the road. I mean, is it something that you could produce additional materials through discovery, or is it just pure reliance on California law? We certainly know. As we said, the defendants have stonewalled us on discovery from the beginning. They've refused to do any discovery until after hearings on the motion is to dismiss. What kind of discovery would you get from the government about the use of this road? Partly it is we don't know what we would get from discovery because we haven't been able to get it. What could you conceivably get from the government about the prior use of this road? Honestly, I wish I had a response for you, Your Honor, but what we would like to do is take some discovery to go into the background of what's been going on here. Why did they not record this deed? You know, to this date nobody's bothered to tell us that. But my colleague has pointed out that in at least two instances you have matters of public record as to which your client has constructive notice that describe what this interest was. I mean, you're a good lawyer, I'm sure. And it's elementary that if you have something that is in the public record, and as he pointed out, in the chain of title, all you have to do is look at it and you'll see what's there and what's not there. And the problem here is that if you look at this as just a matter of pure California law, it kind of looks like your client, albeit unknowingly, kind of set on her rights, either through the constructive notice or the fact that the gate was put up and it was blocked. I believe one of the things that is in the record is that the title report that my client got when she obtained her interest in that land did not disclose the 1952. It's December 7th, so I'm aware of what's going on up here. So, okay, go ahead. Yes, it is. The title report didn't disclose that 1952 declaration of taking. I don't know why it didn't disclose it. If it was recorded and if it was in the chain of title, it should have been recorded, reported, but it wasn't. So nobody told her about that. You may have a claim against the title company if you act quickly enough, but the reality is if it's in the county records, she is put on constructive notice of what's there, right? If it's in the records. California law. If it's in the records. And it is, right? I can't say that. Okay. If based on what we see in the record, we think it is, that's kind of conclusive in terms of notice, is it not? I'm afraid that would provide notice. You said in your brief the declaration of taking and the judgment contained the same language that the acquisition was, quote, So you've acknowledged that it's in the declaration of taking. The government filed the declaration of taking in 1952, and that declaration of taking is in the chain of title of the neighboring property. So she's on constructive notice. It's there. You don't need to go to the archives in Paris to find it out. It's right there in the county records. Well, what we didn't know was that the eminent domain judgment had been held open. But you're not showing anything that you have to record the details of litigation like that. What you have to record are the substantive rights and burdens on properties. That's what you have to record. And that was recorded. You wanted to save five minutes. You don't have that amount. You can continue on, or you can come back with a rebuttal, whichever you prefer. Let me take another minute or so now. Okay. And I do see the clock winding down. But it just seems to me that regardless of what was in the declaration of taking, when you have the eminent domain judgment that says, this judgment will remain subject to reopening to take care of anything that happens afterwards. And what happened afterwards is that the federal government claimed to have taken more than what it actually condemned. And what we're asking in this case is that we reopen that judgment so that what the federal government actually took at the time can be added into the condemnation case. Just for discussion purposes, let's say you're right. You still have to go to the court of claims and deal with the quiet title action, right? What you're saying is that action is governed by what the court order says, and you can open it up. But that statute was passed, of course, after the time period that we're talking about here. But it governs claims against the United States in connection with land, does it not? And it overrides state law. It does. But what we've got here is an actual case that was in federal court. It wasn't in the court of claims. It was in federal district court, what was then the southern district. Right. And that judgment remained subject to being opened. And I think that what happened here was that the district court in this case erred by not reopening that judgment to take a look at it. I don't think you'd have to go to the claims court to reopen a condemnation judgment in federal district court. So one of your points is that the quiet title action does not govern here. Yes, absolutely. That's your position. Absolutely. Do you agree that if it does, you lose on that point? If it does, we have problems. First off, the quiet title act statute of limitations is under direct assault this moment. As this court undoubtedly knows, last week the Supreme Court heard argument in a case that directly that only involved whether the statute of limitations in the quiet title act is jurisdictional and would preclude a case like this. The court may want to wait and see what the Supreme Court says about that. Because if they say it's not jurisdictional, then the issue is that the statute of limitations is merely an affirmative defense, and it's up to the defendants to prove it. If that's the only element of the case on which we could decide that you're right, but it may not be. Do you want to save any of your time? I probably should reserve the balance. It's entirely up to you, sir. I should reserve the balance. Thank you. Very good, Mr. Berger. Okay, now we have three different distinguished lawyers, and you're listed in, I'll tell you what the order shows here, and you tell me if it's right. So we're starting out with Mr. Badagan for 10 minutes, right? That's correct. Okay, and then Mr. Carter for five minutes, right? Yes, sir. Okay, and then Ms. Kim for five minutes. Is that correct? Yes, sir. All right, so let's go ahead and start. Watch the time. There's a trap door there. Very, very sensitive. Okay. Yes, Your Honor. Okay, please start. Good morning, and may it please the Court, Assistant U.S. Attorney Matthew Badagan for the Bureau of Reclamation. Reclamation respectfully requests that this Court affirm the district court for three reasons. First, because Section 1983 applies to state rather than federal actors, Kimball Griffith has not alleged or established jurisdiction under the Little Tucker Act, the district court lacked jurisdiction over any federal taking claim against reclamation. Well, the final judgment in the condemnation action does contain language that says that jurisdiction is retained to make further orders and decrees if they may be necessary, a sort of standard language in case there's a dispute over the decree that it can be reopened so the scope of it can be determined by the court. Why isn't that an existing waiver of sovereign immunity, and what is the statute of limitations that would apply to a request to reopen that judgment for that purpose I just described? Yes, Your Honor, even if it were necessary to reopen, our position would be that you would need to bring a claim, as this Court has discussed, with the Court of Federal Claims to decide what was just compensation. We would argue this says jurisdiction is retained to make further. In this Court, this is not a retention of jurisdiction to send people to the Court of Federal Claims in D.C. This is a jurisdiction preserved in what's now the Central District of California to make this determination. If there's any dispute about the terms in the decree of taking, that language was there, and so that could be a consideration. It's embraced within the waiver of sovereign immunity that comes when you file a condemnation against someone and take their property. That's the statute of limitations that applies to that. That's an excellent question, Your Honor. I think the 12-year statute of limitations for the Quiet Title Act is what we're looking at, or the six-year. The theory how you get to the 12 years under the Quiet Title Act is that you need a waiver of sovereign immunity, and the only one available is the Quiet Title Act, and it's subject to a 12-year condition. But we have another waiver of sovereign immunity, which is in the judgment, and it doesn't have any time limit specified. Now, maybe there's an equitable time limit under Rule 60 or something, but I don't see how we necessarily, for purposes of invoking the procedure with it, which has accompanied with it a waiver of sovereign immunity, how we necessarily get to the Quiet Title Act. Can you explain that to me? Yeah, I think first you look if it has any motion to reopen if it were necessary, so I would argue that we don't concede that that would be something that would be granted in any case. But the Court looked thoughtfully through the order and the taking and determined we didn't need to get there and, in fact, do what the decree permitted. It did consider and decided there was nothing there. Is that what you're saying? I don't want to overexpress what Judge Barat did at the District Court. I think his view was taking all facts as true. There was no dispute that there was a property interest in a road in this case. Okay, but what I'm asking is this. Your opposing counsel and colleague says that the decree reserved jurisdiction. My colleague has pointed out that in that case the United States has waived sovereign immunity by its very nature. When Judge Barat looked at this, did he do so, if you will, in response to the reservation of rights that their claiming existed under the decree or on some other basis? I think he looked at it as the only claim that could be brought would be a Quiet Title Act claim. Okay, but when it was brought, I don't have it right in front of me, but did they endorse the order, the judgment that had that reservation of rights in connection with their lawsuit? Yes, they're doing that now. Okay, but did they, when Judge Barat considered this case? That was in the record. The order, the judgment remained open. But as I mentioned previously, the court determined that the only possible route to evaluate this claim was as a Quiet Title Act claim, so I don't believe that was reopened. So from the government's perspective, they did invoke the earlier judgment. Judge Barat said, this is Quiet Title action. We really don't have jurisdiction here. This has to go to the court of claims. Is that what they did? I don't, from the government's view, I think they attempted to reopen the action. It's clear on the caption of the document that they filed, and the court decided that the way that he would interpret the claim as being brought was a Quiet Title action, so I know we're going, I'm not sure if that's directly responsive, but that's what the court did, Your Honor. Okay, so what I'm trying to clarify is this is not a hypothetical. This is what they did. They actually invoked the earlier judgment, and that's the basis on which Judge Barat considered this matter. Is that right? That's right. Okay. But I still, I guess I'm a little bit unclear as to how we get to the 12-year statute of limitations under the Quiet Title Act if we view it as invoking the jurisdiction in the decree with its waiver of sovereign immunity to have it be reopened to determine whether or not the decree has been properly construed. Do you have any case that says that the Quiet Title Act statute of limitations applies to that kind of a reopening of a decree? I think the case that we would argue is beggarly. It says that tolling does not apply. That case looked to the statutory language, and so we would argue that The tolling goes to the, excuse me, the operation of the statute of limitations. My question is sort of antecedent to that, which is what says that we even apply that statute of limitations to the procedural vehicle of a reopening of a decree? Your Honor, I would just point to the Quiet Title Act, the statute of itself. I don't know that we have a case for reopening the 1950s takings case, but our position was that, and it is that, the United States is sovereign unless it consents to being sued. And here, the only possible way for the court to get, you know, I think they focus so strongly on California statutory law. The only way that that could be heard is in a Quiet Title Action or the Court of Federal Claims. Because the decree has within it a waiver of sovereign immunity. When you sued and condemned the property and got the decree and consented to having the decree reopened, that's all within the scope of the waiver of sovereign immunity inherent in bringing litigation against private parties. I would argue that it's not in perpetuity and that they have sat on that case for many, many decades, for decades, for many years. It sounds like latches or maybe a Rule 60 argument, but it's, I don't see how we get to the 12-year statute from that device. I gather that there is no case of which you are aware that deals with this specific situation where you have a previous condemnation with a reservation right to go back to the court that occurred prior to the adoption of the Quiet Title Act. Is that right? That's correct, Your Honor. Okay. So, essentially, from your perspective, we're dealing with a new law, a new interpretation of law. I think from my perspective, the federal government took property as it did in many other occasion to create a water resource for the region. It has an interest in doing so. And the property holder, and in this case, they step in the shoe of the predecessor in interest, and so they signed that they were aware of what was going on. They didn't include the maps or a reservation of an easement, as we discussed previously. So I would argue that… Talk about the merits, though, and I think we're… The allegations contained in the First Amendment petition. Okay. Other questions that either of my colleagues have? Very well. Well, thank you for your presentation. So we'll now hear from Mr. Carter, representing Kachuma Operations and Maintenance Board. Oh, you're going to go next. Okay. If that's all right with you, Your Honor. You've switched around here. Okay. Mr. Carter allowed me to go second. Very well. Go ahead, Ms. Kim. May it please the Court, I'm Kelly Kim on behalf of the County of Santa Barbara Defendants. I just wanted to make a couple of points in response to some issues that had been raised earlier, one of which was questions about the allegations of prior use of this particular road, and I wanted to draw the judge's attention to the district court's order granting the motion to dismiss the First Amendment petition or complaint that's on excerpt page 10. The district court judge says that the plaintiff is alleging only that the subject road would provide vehicle access for portions of their property when they develop or subdivide their 40 acres, and that the judge concluded that that meant the plaintiff was alleging a potential future loss and that the record indicated that the plaintiff had at least two other paths of access to the property. And that kind of ties into this discussion we had had earlier about Bridard and the Bassage cases, and I think there's two critical ways that this case is true. To that reference here on ER 10 as indicating that the state of the facts is reflected in the pleadings, is that she didn't allege any prior use prior to the closure of the gate in 1991 of this road? Yes, I think he's emphasizing that the allegation is that this would provide vehicle access,  What's the position of the county to the, what we've just been talking about here, whether or not the district court has the authority to basically reopen the condemnation and construe what was taken, I guess, as the primary issue? Do you believe that there is jurisdiction? And if so, do you have any case law or anything else that you could cite us to? Your Honor, the cases I would cite you to are Block and Robinson, cases that say the exclusive avenue for challenging the federal government's title to land is through the Quiet Title Act. And that's retroactive, is it not? In other words, even if you have acquisition of land many, many years ago, you're still governed by the Quiet Title Action now. That's what you go under, right? Yes, correct. And so the Bassich and Breitart cases, I think, are distinguishable. So the Quiet Title Action voids the jurisdictional reservation here and requires that the court of federal claims, a non-Article III court, construe the meaning of the decree of an Article III court. I don't think it voided the reservation of jurisdiction. I think that was limited to the question of compensation. And so I would argue that the court reserved jurisdiction to ensure that the Kunis received their check and received compensation for the taking of their property. But once that check cleared and that condemnation case was then effectively closed, then decades later we have disputes about what can happen on this federal land, and that's exactly what the Quiet Title Act was designed to accommodate. In other words, an eminent domain action by definition is what's going to get paid for what was taken. But I think they're claiming that there's a question about what was taken, that there was more taken or less taken. Would that make any difference? I still view that as a Quiet Title Act claim because the question is, is there an easement or not? And there's a number of cases out of this circuit where that kind of claim is litigated through the Quiet Title Act. I also wanted to point out there's no allegations in the complaint that this was a public street, and so that's a way of distinguishing the Bessage line of cases, nor is there any substantial impairment to access to the public streets because the entire western flank of this property has a public street, Ortega Ridge Road, and that's the only road that could be accessed through the federal road. How much of the road are we talking about here? Do you know, maybe it's not in the record, what the distance is between the two gates? That is a great question, and I don't have it at the tip of my fingers. I know there are maps included in the record that might provide some of those details, but I don't know. Because people can come all the way up to the west gate on the western edge of the reservoir and then all the way up to the east gate on the eastern edge of the reservoir, and so are we only talking about that distance in between so they can come all the way up to either side? I agree that people can come up to the western edge. On the eastern edge, I'm a little less clear on where. I don't think that connects to a public street on that side. I gather the county's position, as you know, your colleague in opposition, suggests that basically when there's property that involves a public street, the abutting owner owns to the Mesna line of the public road. But there's no public road here, isn't that right? We're not dealing with that. Correct. Okay, so that concept doesn't really help them from your perspective. That is correct. Okay. Other questions by either of my colleagues? All right, very well. Thank you. Thank you. Now we're going to hear from Mr. Carter. A fine gentleman letting this person go first. This is the wind-up, right? Yes, Your Honor. May it please the Court, William Carter on behalf of the Kachuma Operation and Maintenance Board, or sometimes referred to as COMB, in answer to one of the questions from Justice Collins, that road, the access road that's at issue here, is relatively short, maybe less than a quarter of a mile, not even quite half a mile. Can you reach it from the east side? Excuse me? Can you reach it from the east side up to the east gate? Yes, yes. The only thing that's blocked is the center. It's gated. And that's gated for maybe 100 yards less, something like that. And you can have road, public road access from the east side. In other words, you can come up. None of this is in the record. There's some maps, and you can kind of interpret it. But on the west side, there's Ortega Ridge Road, and then it goes up to the north, and on the north side is Highway 192, which is also known as Foothill. And there's other roads that access Foothill from the east, and that road on the east side, you can go down to the southeast and access back through Greenwell Avenue to Ortega Ridge Road. So it's kind of – there's this big circle of roads. The issue is whether the plaintiffs can access across to – it's a shortcut. It goes right across the north side over Ortega Reservoir. And the reason it was closed was for public health reasons. They didn't want people around this federal infrastructure, which is a critical reservoir. The other issue that was asked, and I believe my colleague, Ms. Kim, answered it, was were there any allegations of the usage of the road prior to the road – No, there's no allegations at all, and that's reflected in the excerpt of record on page 10 relating to the order that was issued dismissing the First Amendment complaint. The other issue, there was a question about whether – at least my client, Combe, was telling the plaintiffs what rights they had or didn't have. Now, it's in the record, Excerpt 144 and Excerpt 88. You can see these letters between Combe and the plaintiff, not only Ms. Kimball Griffith herself but her son, Dr. Richard Griffith. Back in 1999 and in 2010, there was an exchange of letters where the Griffiths were asking, can we use this road? And they were put on notice, no, you can't use the road. And for whatever reason, they didn't take action at that time. So you had – and the issue, whether this is a quiet title action  I think it's clear when you look at in the pain matter, which came up not because of us. We didn't raise the pain matter, the previous issue. That issue was raised by plaintiff in their complaint and their First Amendment complaint. And in fact, if you look at the district court's ruling in pain, he first analyzes the quiet title act and deals with the subject matter jurisdiction and the 12-year statute of limitations. But then in the second – in the First Amendment complaint and the order dismissing that, the judge rules – the district court judge, Judge Barad, he rules on a taking action. He doesn't use the 12-year statute of limitations for a quiet title. He uses the two-year for taking. He actually not agrees, but he says, assuming this is not a quiet title action, I'm using a taking statute of limitation. And he does in fact address the – or has to address this reopening issue because in the First Amendment complaint, you see that in the First Amendment complaint and in the complaint, the plaintiffs actually raised that issue. We want the court to reopen this on retained jurisdiction from the imminent domain action from 1992. And the district court, he doesn't reopen it. Well, suppose that just hypothetically – I know it's not the faxes, but hypothetically the suit had been brought within the 12 years. Would you be able to get out of the suit based on two years or would the fact that your claim is derivative of the government's claim and the government is – its rights are now at issue because we're within the 12 years bring you into it as well? Well, at that point, the issue for me is whether they've established a property interest. I wouldn't have to – I understand there's alternative issues, property and timeliness. I'm trying to focus just on the timeliness. We wouldn't look at the two years in the scenario I just described, would we? Correct. We would look at the 12-year. But I would also add, I know my time is up, if you look at the prior pain matter, and again, we're not – the only reason the pain matter comes up in this case is because the plaintiffs raised it in their complaint, in their First Amendment complaint, and in their arguments. But in the pain matter, when it came up to this court in 2017, the plaintiffs – or the pain, Ms. Payne in that matter, she sought requests for judicial notice, which the court granted. And within that request for judicial notice was the judgment, the argument that the court should reopen this issue, that there was retained jurisdiction. So the Ninth Circuit in the pain matter actually saw the 1955 judgment and the issue of whether there's retained jurisdiction. Are we bound by pain? Excuse me? Are we bound by pain? I don't believe you are. But I do think – I would say no because it's not the law of the case, but I think it's instructive because they had their – rather, this issue, the very same issue was raised in front of the Ninth Circuit in 2017. I gather your basic point, though, is they've never established a property interest. That's our position. And if that's correct, all the rest of this is just chat. Correct. It's all hypothetical. Questions by my colleague? Very well, thank you. Thank you very much. All right. Mr. Berger, you have a little time. Take your time. I have no choice. Ha, ha, ha, ha. Thank you, Your Honors. I don't want to spend a whole lot of time on the pain matter, which I think is a diversion, but if you look in our reply brief, it is succinctly discussed there why it has no impact here. Pain was not a party to that condemnation matter, pain the person, and it was a different issue that was raised there, not the one that's raised here. The only question I would have about that one, did that provide, if you will, an additional notice to your clients about the nature of the claim? I don't believe so because the pain raised a wholly different issue. The question came up about statute of limitations for proceedings under the old eminent domain judgment. I don't believe there is one for reopening. We did brief that issue on the question of reopen, and I provided a number of cases to the court that deal with, you know, whether you can make it short, maybe you make it long. It seems to be up to the discretion of the court, and in a case like this one where it simply is open-ended, I don't believe there is a statute of limitations that you would have to apply. What's your best case for that proposition that there is no statute of limitations? The only cases I have for you, Your Honor, are the ones that I briefed probably in the reply brief that show that, well, maybe in the opening brief as well, that show that the courts in holding a jurisdiction open can make it for a finite period of time or can leave it open-ended. And it seems to be up to the court looking at it, whether it's one or the other. Let me ask you this. Did you represent the plaintiffs in this action before Judge Barat? I came into this case personally just before the hearing on the final motion to dismiss. Okay. But you can still answer this question, I think, and that is when the claim was made before Judge Barat, was it guised as a petition to reopen the judgment? Oh, absolutely. Okay. Absolutely. The petition is called that. Yeah. So from your perspective, whatever rights existed and exist under that document, you attempted to exercise them by going to Judge Barat, and what he did or didn't do flows from that. Is that correct? Yes, Your Honor. Okay. Other questions by my colleague? It's a very interesting case. It really is. We thank you all for your very able presentation. And the case just argued is submitted, and the Court stands adjourned for the day. Thank you. All rise.
judges: SMITH, COLLINS, LEE